230 P.3d 654 (2010)
STATE of Washington, Appellant,
v.
James L. GREEN, Respondent.
No. 38893-6-II.
Court of Appeals of Washington, Division 2.
May 11, 2010.
*655 David Bustamante, Attorney at Law, Raymond, WA, David John Burke, Attorney at Law, South Bend, WA, for Appellant.
Peter B. Tiller, The Tiller Law Firm, Centralia, WA, for Respondent.
HOUGHTON, P.J.
¶ 1 The State appeals, arguing that the trial court erred in dismissing, on mandatory joinder and double jeopardy grounds, James Green's charge for failure to register as a sex offender. We affirm.

FACTS
¶ 2 Green, a convicted level II sex offender, is required to register every 90 days under RCW 9A.44.130. He registered as required with the Pacific County Sheriff on April 9, 2007, but he failed to report again until April 29, 2008.
¶ 3 The State charged Green with one count of failing to register as a sex offender, with the date of the alleged offense as "on or about July 9, 2007." Clerk's Papers (CP) cause number XX-X-XXXXX-X, filed May 2, 2008, at 7; RCW 9A.44.130(7). In September 2008, the trial court held a bench trial and found Green not guilty because the State failed to prove an "essential element" of the offense that Green had a "fixed residence" on or about July 9, 2007. CP at 28.
¶ 4 By amended information, the State again charged Green with one count of failing to register as a sex offender, with the date of the alleged offense listed as "on or about October 8, 2007." CP at 12. He moved to dismiss, arguing that the State's filing of another case against him for the same offense violated the mandatory joinder rule under CrR 4.3.1 and the constitutional prohibition against double jeopardy.
¶ 5 The trial court agreed with Green and dismissed the case. The State appeals.

ANALYSIS
¶ 6 The State contends that the trial court erred in holding that mandatory joinder and double jeopardy barred Green's prosecution. The State further contends that under the separation of powers doctrine, a trial court may not prevent the prosecutor from exercising its discretion in making charging decisions. On the double jeopardy argument, we disagree.[1]
*656 ¶ 7 The double jeopardy clauses of the United States and Washington State Constitutions protect a defendant from multiple convictions for the same crime. U.S. Const. amend. V; Wash. Const. art. I, § 9; State v. Tvedt, 153 Wash.2d 705, 710, 107 P.3d 728 (2005). Double jeopardy protections are also implicated where the State seeks to subject the defendant to a second trial for the same offense. See United States v. Scott, 437 U.S. 82, 87-88, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978). We review constitutional challenges de novo. State v. Jones, 159 Wash.2d 231, 237, 149 P.3d 636 (2006).
¶ 8 In order to determine whether a defendant's rights against double jeopardy were violated, we must determine what "unit of prosecution" the legislature intended to be the punishable act. State v. Adel, 136 Wash.2d 629, 634, 965 P.2d 1072 (1998). The "unit of prosecution" refers to the scope of the criminal act. Adel, 136 Wash.2d at 634, 965 P.2d 1072. Our analysis requires that we look first to the statute's plain language and, if necessary, to the legislative history. State v. Durrett, 150 Wash.App. 402, 406, 208 P.3d 1174 (2009).[2] But if the legislature's intent is unclear, the rule of lenity requires us to construe any ambiguities in the defendant's favor. State v. Bobic, 140 Wash.2d 250, 261-62, 996 P.2d 610 (2000).
¶ 9 RCW 9A.44.130 imposes a general duty on sex offenders to register. And RCW 9A.44.130(7), which relates specifically to Green's duty, states in pertinent part:
All offenders who are required to register pursuant to this section who have a fixed residence and who are designated as a risk level II or III must report, in person, every ninety days to the sheriff of the county where he or she is registered.
The State charged Green under RCW 9A.44.130(11)(a), which provides that "[a] person who knowingly fails to comply with any of the requirements of this section is guilty of a class B felony."
¶ 10 It is unclear from the statute's plain language whether the duty to register "in person, every ninety days" establishes the "unit of prosecution" as each 90-day period in which an offender with a fixed residence fails to register or treats the failure as an ongoing course of conduct. RCW 9A.44.130(7). Division One considered a similar question in Durrett and found the statute ambiguous, construing it in the defendant's favor.[3] 150 Wash.App. at 410, 208 P.3d 1174.
¶ 11 The State argues in part that one of the operative terms in RCW 9A.44.130(11)(a) is the word "any," which establishes separate discrete violations for each 90-day period Green failed to register. But in Durrett, the court recognized that "any" is often construed to mean "every" and "all" rather than "one." 150 Wash.App. at 408-09, 208 P.3d 1174. The State also argues generally that the legislature's intent in establishing the registration requirements was to assist law enforcement agencies in protecting the public and that construing the statute as creating discrete violations fulfills that intent. And the State noted that under Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the 90-day difference between each charge is "more than sufficient to establish the second crime as separate and distinct." Appellant's Br. at 17-18. But Blockburger articulated that in the case of a single "impulse," only "one indictment lies." 284 U.S. at 302, 52 S.Ct. *657 180. The State's arguments do not persuade us.
¶ 12 Green recites a few statutory provisions to support his argument that we should construe his failure to register as a continuing course of conduct. In order to ensure that a convicted sex offender avoiding detection by failing to register could not outrun the statute of limitations, the legislature established that "[u]nless relieved of the duty to register pursuant to this section, a violation of RCW 9A.44.130 is an ongoing offense for purposes of the statute of limitations under RCW 9A.04.080." RCW 9A.44.140(6). And under RCW 9A.44.130(4)(c), the legislature explicitly established that "[a]n arrest on charges of failure to register, service of an information, or a complaint for a violation of this section, or arraignment on charges for a violation of this section, constitutes actual notice of the duty to register."[4]
¶ 13 In light of these statutory provisions and Division One's reasoning and holding in Durrett, we construe the duty to register every 90 days as creating an ongoing course of conduct that cannot support separate charges. Furthermore, the facts of this case support our "unit of prosecution" determination. In this instance, Green first violated RCW 9A.44.140(11)(a) on or about July 9, 2007. He committed an ongoing and continuing offense from that point until he registered again on April 29, 2008. It was not until after April 29 that the State charged him for the first time.
¶ 14 The State's argument that the failure to register for each 90-day period after Green failed to register constitutes a separate charge is based on a flawed reading of RCW 9A.44.130. The State may file another charge for new failure to register conduct, so long as the continuing course of conduct of a prior failure to register has ended.
¶ 15 The trial court properly dismissed the charge for failure to register.[5]
¶ 16 Affirmed.
I concur: QUINN-BRINTNALL, J.
HUNT, J., dissenting.
¶ 17 I respectfully dissent from the majority's view that the entire period in which Green failed to report constituted "an ongoing course of conduct that cannot support separate charges." Majority at 657. I would reverse and remand for trial.

I. Multiple Violations; No Double Jeopardy
¶ 18 The United States and Washington State Constitutions protect defendants from double jeopardy. U.S. Const. amend. V; Wash. Const. art. I, § 9. It is impermissible for a defendant to be convicted more than once for the same crime under the same statute. State v. Tvedt, 153 Wash.2d 705, 710, 107 P.3d 728 (2005). But when facts show multiple violations of the same crime, a defendant is properly charged with multiple violations. Therefore, the double jeopardy question focuses on what "unit of prosecution" the legislature intends as the punishable act under a given statute. State v. Westling, 145 Wash.2d 607, 610, 40 P.3d 669 (2002); In re Davis, 142 Wash.2d 165, 172, 12 P.3d 603 (2000). The proper unit of prosecution revolves around statutory interpretation and legislative intent. State v. Adel, 136 Wash.2d 629, 634, 965 P.2d 1072 (1998). If the legislature's intent is unclear, the court will construe hypothetical ambiguities in the defendant's favor in accordance with the rule of lenity. State v. Bobic, 140 Wash.2d 250, 261-62, 996 P.2d 610 (2000). Such is not the case here, however.
¶ 19 To protect the public from convicted sex offenders released back into the community,[6] *658 our legislature requires them to register their locations with their respective county sheriffs and to report periodically to confirm their locations. RCW 9A.44.130(4)(b) expressly provides: "Failure to register within the time required under this section constitutes a per se violation of this section and is punishable as provided in subsection (11) of this section."[7] (emphasis added). The legislature thus focuses on "a" failure to register within the required 90-day period as "a" single violation. The statute is not ambiguous nor is the legislature's intent unclear. In my view, therefore, it is unreasonable to read this plain language as an indication that the legislature intended to punish a sex offender who repeatedly flaunts the law by repeatedly failing to report for multiple 90-day periods the same as a sex offender who fails to report only once.
¶ 20 My view is consistent with People v. Meeks, in which the California Court of Appeals rejected an argument similar to Green's in a case involving an analogous California statute requiring a sex offender to register annually on his birthday and also when he changed his address:
Defendant contends that his conviction for failing to register within five days of his birthday should be stricken because [California Penal Code] section 290's registration requirements are continuing offenses. He argues: "Once a registrant has willfully failed in the legal duty to update that registration upon birthday or change of address, that state of law violation continues until terminated by some significant event, registration, arrest, death, etc. While a former registrant is in that state of willful failure to comply, the passage of other events requiring registration cannot be new offenses because the existing violation had not yet been completed. That a second birthday passes or another change of residence occurs is not a new offense, but merely a continuation of the state of unlawfulness." We are not persuaded.
Failure to register under section 290 is a continuing offense (§ 290, subd. (g)(8); Wright v. Superior Court (1997) 15 Cal.4th 521, 528, 63 Cal.Rptr.2d 322, 936 P.2d 101), that is, one "marked by a continuing duty in the defendant to do an act which he fails to do. The offense continues as long as the duty persists and there is a failure to perform that duty." (Id at p. 525, 63 Cal.Rptr.2d 322, 936 P.2d 101.) But simply because the Legislature intended that a violation of section 290 be a continuing offense does not mean that a defendant cannot be convicted and punished for new and separate violations of section 290 as he continues to ignore the law.

. . . .
The Legislature has found it imperative for the safety of society that the location of sex offenders be known to law enforcement at all times,[8] thus requiring defendants *659 subject to section 290 to reregister annually and upon a change of location serves that purpose by providing law enforcement with updated information through which it may track these defendants. It would ill serve the purpose of section 290 to provide defendants who fail to register with blanket immunity from prosecution for all but a single failure to register. A defendant who knows that he is subject to prosecution for each violation of the registration requirement is more likely to comply in order to avoid additional punishment and is more likely to become visible again to law enforcement. Thus visible, he arguably is less likely to repeat his sexual crimes. By requiring defendants to register annually and with every change of residence, it was no doubt the Legislature's intent to treat each violation of the registration requirements as a separate, continuing offense in order to encourage compliance with the law and to ensure to the extent possible that a sex offender's whereabouts remain known.
People v. Meeks, 123 Cal.App.4th 695, 702-703, 20 Cal.Rptr.3d 445, 450 (Cal.App. 3 Dist., 2004) (emphases added).
¶ 21 The California court acknowledged, however, "Had the prosecution charged a separate offense for each day of defendant's failure to register when he changed his address, the defendant would then have been subjected improperly to multiple convictions for a single criminal act." Meeks, 123 Cal. App.4th at 703, 20 Cal.Rptr.3d 445 (emphasis added). But the court clearly distinguished and held lawful "Defendant's separate convictions for failure to register upon a change of address and to register annually on his birthday. . . ." Meeks, 123 Cal.App.4th at 703, 20 Cal.Rptr.3d 445.

Failure to register within five days of defendant's birthday occurred after December 8, 1998, and again after December 8, 1999, and every year thereafter. Although the periods for each of these offenses overlap somewhat and the objective of each is the same, it cannot reasonably be argued that defendant can be punished only once for each successive failure to register.
. . . .
"[T]he purpose of [California Penal Code] section 654 `is to insure that a defendant's punishment will be commensurate with his culpability.'" [citation omitted] . . . [F]ailure to punish defendant for each failure to register would violate this purpose. A defendant who . . . repeatedly allows a birthday to pass without registering, is surely more culpable than one who fails to register following only one triggering event. Section 654 does not prohibit the multiple punishments imposed in this case.
Meeks, 123 Cal.App.4th at 705-706, 20 Cal. Rptr.3d 445 (emphasis added).
¶ 22 In Meeks, the repeating registration period was one year under the California sex offender registration statute.[9] Here, the period is 90 days under Washington's sex offender registration statute.[10] But the same rationale should apply to both situations. Clearly our legislature's intent in enacting our sex offender statute was similar to the intent of California's statute. As Meeks describes above, the statute is intended to keep convicted sex offenders who have been released into the community visible to law enforcement by requiring periodic registration and re-registration, and to encourage offenders to comply with registration requirements by punishing more harshly those who repeatedly fail to register over specified periods of time. To hold that Green's successive violations of Washington's registration statute were merely one unit of prosecution, susceptible to one conviction and one punishment, leads to a result that our legislature could not have intended, namely that Green's repeated failures to register for multiple 90-day periods over the course of more than one year would leave him no more culpable than *660 one who failed only once to register during a single 90-day period.
¶ 23 Green's multiple failures to register during successive 90-day periods should constitute multiple units of prosecution because they are separate and distinct offenses whether analyzed under double jeopardy or for mandatory joinder principles. I would hold that the State's prosecution and conviction of Green for failing to register during the second 90-day period did not expose him to a second prosecution for the same offense and, therefore, did not constitute double jeopardy.

II. Mandatory Joinder
¶ 24 Although the majority reaches it decision solely on double jeopardy grounds, the trial court dismissed on both double jeopardy and mandatory joinder grounds. Therefore, I also address mandatory joinder in this dissent. As the State argued, a sex offender who fails to register for two consecutive 90-day periods commits two separate offenses that are not "related" for purposes of the mandatory joinder rule; therefore, the trial court erred by granting Green's motion to dismiss under CrR 4.3.1(b)(3) for failure to join the July 9 and October 8 charges.

A. Not "Related Offenses"
¶ 25 Under the mandatory joinder rule, two or more offenses must be joined if they are "related offenses." CrR 4.3.1(b)(3).[11] Offenses are "related" if they are within the jurisdiction and venue of the same court and are based on the "same conduct."[12] CrR 4.3.1(b)(1). As our Supreme Court explained in State v. Lee, mandatory joinder is not required because offenses are based upon a series of acts constituting a single scheme or plan, but rather because a series of acts represents a single criminal incident or episode of the "same conduct." 132 Wash.2d 498, 503-04, 939 P.2d 1223 (1997). The Supreme Court noted that a series of acts constituting the same criminal episode could span many hours or even days, however, "[c]lose temporal . . . proximity . . . will often be present." Lee, 132 Wash.2d at 503-04, 939 P.2d 1223. But the State's awareness of additional charges does not require mandatory joinder under the rule.[13]Lee, 132 Wash.2d at 505, 939 P.2d 1223.
¶ 26 Here, the two criminal episodes for which the State charged Green were 90 days apart (July 9 to October 8, 2007). Although Green's violations consisted of the same criminal activity, they did not derive from the "same conduct" because they encompassed more than one episode or incident of failure to register. Therefore, the multiple 90-day periods were not "related" for purposes of the mandatory joinder rule under Lee.

B. "Ends of Justice"
¶ 27 Even assuming, without deciding, that Green's multiple sequential failures to register *661 were "related offenses" for purposes of the mandatory joinder rule, remanding for trial of the erroneously dismissed charge meets the "ends of justice" exception. CrR 4.3.1(b)(3). Green's acquittal on the initial charge resulted from the trial court's mistaken interpretation of the statutory elements of failure-to-register. It is undisputed that Green failed to register as a sex offender for 385 days and that there were no evidentiary deficiencies in the State's proof that he failed to register during the first 90-day period. Nevertheless, the trial court acquitted because it found that the State had failed to prove what it characterized as an "essential element" of the offense, namely, that Green had a "fixed residence" on or about July 9, 2007. CP at 43. But as the trial court later acknowledged, Peterson held that the State is not required to prove "a fixed residence" as an element of the crime of failure to register.[14]
¶ 28 The trial court's legal error resulted in an erroneous acquittal, which the State could not remedy by appealing.[15] Thus, the State's only option for following the legislature's mandate and holding Green accountable for his persistent failures to register as a sex offender was to charge him with a second, separate violation, this time for failing to register for a different 90-day period. Here, "the ends of justice" were "defeated" when the trial court granted Green's motion to dismiss. CrR 4.3.1(b)(3). See e.g., State v. Ramos, 124 Wash.App. 334, 339, 101 P.3d 872 (2004) (Concerning application of "ends of justice" exception, Division One of our court noted, "[W]e can conceive of a scenario where through no fault on its part the granting of a motion to dismiss under the rule would preclude the State from retrying a defendant or severely hamper it in further prosecution. . . .").[16]
¶ 29 I would reverse the trial court's dismissal of the charge and remand for reinstatement and trial, therefore, I respectfully dissent.
NOTES
[1] Because we affirm the trial court's dismissal based on double jeopardy grounds, we do not discuss the applicability of the mandatory joinder rule or the separation of powers doctrine.
[2] Durrett is directly on point and leads us to resolve the double jeopardy issues here in Green's favor. We also note that Division One issued its opinion in Durrett on June 1, 2009, more than three months after the State submitted its brief in this case.
[3] Durrett involved a defendant convicted of two counts of failure to register as a sex offender. 150 Wash.App. at 405, 208 P.3d 1174. The State charged Durrett for failing to report weekly from December 6, 2006, through January 22, 2007, and also charged him for failing to report weekly from November 6 through November 17, 2006. Durrett, 150 Wash.App. at 405, 208 P.3d 1174. The jury found Durrett guilty on both charges. Division One held that Durrett's two convictions violated double jeopardy and that the rule of lenity required the court to construe the punishable offense as the continuing course of conduct. Durrett, 150 Wash.App. at 404-05, 410, 208 P.3d 1174.
[4] We also note that federal courts have similarly held that the failure to register is a continuing offense under the Sex Offender Registration and Notification Act, 18 U.S.C. § 2250. See United States v. George, 579 F.3d 962, 964, 968 (9th Cir.2009).
[5] The dissent disagrees with our holding in line with Durrett, that Green's failure to register constituted an ongoing and continuing offense until he registered again on April 29, 2008. Dissent at 655. But the dissent fails to sufficiently demonstrate that the legislature clearly intended to establish a discrete "unit of prosecution" every 90 days. Instead, the dissent's disagreement proves our point that the statute is ambiguous. We, therefore, must construe the statute in Green's favor.
[6] RCW 9A.44.130 FindingPolicy1990 c. 3 § 402:

The legislature finds that sex offenders often pose a high risk of reoffense, and that law enforcement's efforts to protect their communities, conduct investigations, and quickly apprehend offenders who commit sex offenses, are impaired by the lack of information available to law enforcement agencies about convicted sex offenders who live within the law enforcement agency's jurisdiction. Therefore, this state's policy is to assist local law enforcement agencies' efforts to protect their communities by regulating sex offenders by requiring sex offenders to register with local law enforcement agencies as provided in RCW 9A.44.130.
[1990 c. 3 § 401.]
[7] RCW 9A.44.130(11) provides:

(a) A person who knowingly fails to comply with any of the requirements of this section is guilty of a class B felony if the crime for which the individual was convicted was a felony sex offense as defined in subsection (10)(a) of this section or a federal or out-of-state conviction for an offense that under the laws of this state would be a felony sex offense as defined in subsection (10)(a) of this section.
(b) If the crime for which the individual was convicted was other than a felony or a federal or out-of-state conviction for an offense that under the laws of this state would be other than a felony, violation of this section is a gross misdemeanor.
[8] The court explained the intent behind the California's sex offender registration statute, which intent is similar to our legislature's intent, as follows:

"`The purpose of section 290 is to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future. [Citation.]' [Citations.] Plainly, the Legislature perceives that sex offenders pose a `continuing threat to society' [citation] and require constant vigilance." (Wright v. Superior Court, supra, 15 Cal.4th at p. 527, 63 Cal.Rptr.2d 322, 936 P.2d 101.)
People v. Meeks, 123 Cal.App.4th 695, 702, 20 Cal.Rptr.3d 445, 450 (Cal.App. 3 Dist., 2004).
[9] Cal.Penal Code § 290(a)(1)(D)
[10] RCW 9A.44.130(7)
[11] CrR 4.3.1(b)(3) provides:

A defendant who has been tried for one offense may thereafter move to dismiss a charge for a related offense, unless a motion for consolidation of these offenses was previously denied or the right of consolidation was waived as provided in this rule. The motion to dismiss must be made prior to the second trial, and shall be granted unless the court determines that because the prosecuting attorney was unaware of the facts constituting the related offense or did not have sufficient evidence to warrant trying this offense at the time of the first trial, or for some other reason, the ends of justice would be defeated if the motion were granted.
(emphasis added).
I note that CrR 4.3.1(b)(3) does not use the term "mandatory joinder"; rather it implies that certain offenses must be consolidated by requiring that the trial court grant a motion to dismiss when the State fails to join "related offenses" that are "based on the same conduct." CrR 4.3.1(b)(1). In contrast, CrR 4.3(a), which expressly addresses joinder for charging purposes, uses the permissive "may" and does not require joinder of charges, even when they are based on the "same conduct."
[12] Green does not argue that his two charges were "related" but argues on grounds that his failure to register was one continuous offense of omission, namely failure to register at all between April 9, 2007, and April 29, 2008.
[13] As an example, the Lee court noted that six residential burglaries committed August 7, 1979, through August 15, 1979, were offenses not related to a seventh committed August 15, 1979, because they were not based upon the "same conduct." Lee, 132 Wash.2d at 504, 939 P.2d 1223 (referring to State v. Mitchell, 30 Wash.App. 49, 631 P.2d 1043 (1981)). In other words, that the alleged criminal activity in each burglary was the same is not enough to conclude all the offenses are based on the same conduct. Lee, 132 Wash.2d at 505, 939 P.2d 1223.
[14] See CP at 43: "The [Trial] Court agrees with the State that under State v. Peterson [145 Wash. App. 672, 186 P.3d 1179 (2008)] . . . the State is only required to prove that a defendant failed to register and that the subsections of the registration statute are definitional and not elements of the crime."
[15] State v. Wright, 165 Wash.2d 783, 791-92, 203 P.3d 1027 (2009) (quoting United States v. Martin Linen Supply Co., 430 U.S. 564, 571, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977) ("That a person may not be retried for the same offense following an acquittal is `the most fundamental rule in the history of double jeopardy jurisprudence'.")).
[16] As the Ramos court further explained:

[F]or the exception to apply, circumstances must be extraordinary; and second, those circumstances must be extraneous to the action or go to the regularity of the proceedings. This suggests that wherever else the exception may operate, it may apply when truly unusual circumstances arise that are outside the State's control.
124 Wash.App. at 340-41, 101 P.3d 872.